## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Oct 12 2018, 6:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Holly L. Lyons
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Greg McCauley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 12, 2018<br><br>Court of Appeals Case No.<br>18A-CR-663<br><br>Appeal from the Hancock Circuit Court<br><br>The Honorable R. Scott Sirk, Judge<br><br>Trial Court Cause No.<br>30C01-1604-F4-588 |

**Tavitas, Judge.**

## Statement of the Case

Greg McCauley appeals his four-year sentence for dealing in a narcotic drug, a Level 5 felony. We affirm.

## Issues

McCauley raises two issues on appeal, which we restate as:

I.      Whether the trial court abused its discretion in sentencing McCauley.

II.     Whether the sentence is inappropriate in light of the nature of the offense and McCauley's character.

## Facts

On March 10, 2016, officers of the Greenfield Police Department arranged a controlled buy where a confidential informant and undercover officers would purchase heroin from McCauley's son, Ryan McCauley ("Ryan"). When the officers arrived, McCauley, instead of Ryan, brought the powdery substance to the undercover officers and exchanged it for money. The substance tested positive for heroin. McCauley stated he was involved in the exchange because, after McCauley woke up and showered, Ryan handed him the substance and told McCauley to "run this out to the car" where the officers were waiting. Tr. Vol. II p. 17.

The State charged McCauley with dealing in a narcotic drug between one and five grams, a Level 4 felony ("Count I"), and possession of a narcotic drug, a Level 5 felony ("Count II"). McCauley pleaded guilty to an amended Count I,

dealing in narcotic drug, a Level 5 felony, in an open plea on January 22, 2018. The State dismissed Count II.

[5] At sentencing, McCauley asked the trial court to consider three mitigating factors: (1) the controlled buy was actually a deal orchestrated between the officers and Ryan—not McCauley himself; (2) McCauley's incarceration would create an undue hardship on him and his family because McCauley has health issues and he supports his wife; and (3) McCauley's crime did not actually cause serious harm to persons or property. McCauley asked the trial court to sentence him to home detention with strict compliance and probation after a term of home detention.

[6] The court declined to find a mitigating factor. Instead, the trial court found the following aggravating factors: (1) the nature of the crime itself; and (2) that McCauley recently violated probation and had a new arrest while on pretrial release. The trial court sentenced McCauley to four years in the Indiana Department of Correction.

## Analysis

### I. Sentencing

[7] Sentencing is a discretionary function of the trial court, and we afford considerable deference to the trial court's judgment. *See Stephenson v. State,* 29 N.E.3d 111,122 (Ind. 2015). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the

defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* In sentencing a defendant, the trial court must enter a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Ackerman v. State,* 51 N.E.3d 171, 193 (Ind. 2016) (citing *Anglemyer v. State,* 868 N.E. 2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218). Indiana Code Section 35-38-1-7.1 provides a non-exhaustive list of potential aggravating or mitigating circumstances a court must consider.

[8] When we encounter a trial court's sentencing order that does not meet the requirements of law, we have several options. *See Williams v. State,* 997 N.E.2d 1154 (Ind. Ct. App. 2013) (citing *Windhorst v. State,* 868 N.E.2d 504 (Ind. 2007)). We may remand for clarification or a new sentencing determination; we may affirm the sentence, if the error is harmless; or we may exercise our authority to review and revise the sentence pursuant to Indiana Appellate Rule 7(B). *Brown v. State,* 783 N.E.2d 1121, 1129 (Ind. 2003). "[E]ven if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." *See Williams,* 997 N.E.2d at 1165 (citing *Mendoza v. State,* 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), *trans. denied).*

[9] McCauley argues the sentence was an abuse of discretion for several reasons: (1) McCauley's guilty plea was not considered a mitigating factor and McCauley did not otherwise receive a benefit from his guilty plea; (2) the trial court should not have found a nature of the offense aggravator in this case; (3)

the trial court's sentencing statement was not sufficient; and (4) the trial court erred in using the presentence investigation report ("PSI") in determining the sentence without the detailed personal information included in the report.

## *A. Mitigators*

First, McCauley contends that the trial court erred by failing to find his guilty plea to be considered a mitigating factor. The State argues that the trial court was not required to give a certain credit or weight to the guilty plea. While it is true that the extent to which a guilty plea is mitigating will vary from case to case, *see Hope v. State,* 834 N.E.2d 713, 718 (Ind. Ct. App. 2005), what weight should be given to the guilty plea as a mitigating factor is a different question than whether the guilty plea should be identified as a mitigating factor. *See Anglemyer,* 875 N.E.2d at 220-221, *see also Cotto v. State,* 829 N.E.2d 520, 526 (Ind. 2005) ("[I]n this case the trial court did not identify Cotto's plea as a mitigating factor at all. This was error. Cotto's guilty plea is a mitigating factor entitled to some weight."). In this case, the trial court declined to find any mitigating factors, despite McCauley's guilty plea. This was error, and the trial court should have concluded that McCauley's entry of a guilty plea was a mitigating factor.[1]

---

[1] We note that McCauley did not ask the trial court to consider his guilty plea as a mitigating factor, but instead identified three other factors that McCauley believed should have mitigated his sentence. Our courts have held "that trial courts should be 'inherently aware of the fact that a guilty plea is a mitigating circumstance.'" *Banks v. State,* 841 N.E.2d 654, 658 (Ind. Ct. App. 2006) (quoting *Francis v. State,* 817 N.E.2d 235, 237 n.2 (Ind. 2004)), *trans. denied.* Therefore, McCauley was not required to ask the trial court to consider his guilty plea as a mitigating factor.

[11] Although the trial court erred in failing to identify McCauley's guilty plea as a mitigating factor, this error was harmless. As the State correctly notes, the trial court was not required to give this factor the weight McCauley requests. The trial court also identified two aggravating factors that were considered in McCauley's sentence. We find it unlikely that the trial court's sentence would have been different even if the court had acknowledged his guilty plea. McCauley had already received some benefit for his guilty plea, namely, conviction of a lesser included offense and the State's dismissal of the other charge against McCauley. *See Banks v. State,* 841 N.E.2d 654, 658-59 (Ind. Ct. App. 2006) ("Because Banks had already received some benefit in exchange for his guilty plea, Banks was entitled to little, if any, mitigating weight for it at sentencing. Thus, we find that the trial court's omission in this regard was harmless error."), *trans. denied.*

[12] Relatedly, McCauley argues that he received no "discernable benefit" from pleading guilty, as the "record does not reflect whether the charge was reduced to a lesser included Level 5 felony as an enticement to plead guilty or because the State later learned that the quantity of Heroin was actually less than originally believed." Appellant's Br. at pp. 7-8. There is no requirement that McCauley receive a certain benefit threshold in exchange for his guilty plea. *See Banks,* 841 N.E.2d at 658. McCauley's Level 4 felony was reduced to a Level 5 felony, and Count II was dismissed. We find that McCauley obtained a

benefit from his guilty plea, and the trial court was not required to weigh his guilty plea as a mitigating factor in the same way McCauley suggests.[2]

### B. Aggravators

Next, McCauley argues that it was an error for the trial court to consider the nature of the offense as an aggravating factor. In determining whether the nature of the offense is an appropriate aggravating factor, "a material element of a crime cannot be an aggravating circumstance." *Gleason v. State,* 965 N.E.2d 702, 711 (Ind. Ct. App. 2012). Instead, "the nature and the circumstances of the crime can be an aggravator." *Id.* "If the nature of the offense is identified as an aggravating factor, the trial court must discuss facts that go beyond the statutory requirements of the crime." *Id.* (citing *McElroy v. State,* 865 N.E.2d 584 (Ind. 2007)). The trial court spoke about the country's opioid crisis, presumably due to McCauley's admission of his drug addiction problem. Even if it was error for the trial court to consider this fact alone as part of the "nature of the offense" analysis, the trial court also found McCauley's recent arrest while on pretrial release was an aggravating factor. This aggravating factor alone would have been sufficient to increase McCauley's sentence one year above the advisory guideline. Therefore, even if the trial court's discussion of

---

[2] While we are aware that there may be circumstances where the State dismisses other charges for its own benefit, and not for the benefit of the defendant, we do not find that to be the case here. *See Cotto,* 829 N.E.2d at 525 (finding that dismissal of other counts against Cotto was not a benefit to Cotto, as the State had dismissed the other counts "in the interests of simplifying the case for the jury and judicial economy to speed the resolution of the charges").

stopping the drug crisis was insufficient as a matter of law, the error was harmless.

### C. Sentencing Statement

[14] Next, McCauley argues that the trial court's sentencing statement was "brief," "lacked detail," and "sparse." Appellant's Br. p. 6. When sentencing a defendant for a felony, the trial court must enter a sentencing statement "including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer,* 868 N.E.2d at 490. The statement must have a "'reasonably detailed recitation' of the court's reasons for imposing" the term. *Id.* at 492. Importantly, a statement that identifies both aggravating and mitigating factors and explains why "they are deemed as such" can be sufficient to "conduct meaningful appellate review." *Id.*

[15] The trial court stated:

> Well Mr. McCauley I can tell Ms. Fehr did an excellent job trying uh doing her best to represent you. Um I can tell you have health problems . . . [b]ut uh you have health problems and the fact that you didn't show up to probation, the fact that you got another offense that – that right off the bat even if it wasn't a dealing case I – I would be un in [sic] not inclined to give you home detention. Uh your [sic] and being a dealing case and I consistently speak to our community that the only way we're going to solve the uh opioid crisis in our community and our State and our Nation is that we help the people who are users and we try to rehabilitate them and we cut off the supply. That means people who are willing or engage in dealing they go to jail.

Tr. Vol. II pp. 34-35. The trial court went on to say:

> That's not acceptable behavior. So I cannot find a mitigating
> factor in the matter and then your aggravating factors are you're
> [sic] the nature of the crime of course itself and then that you
> recently violated and had a new arrest while on pretrial release.
> I'm going to sentence you pursuant to the recommendation to
> four years to the Indiana Department of Corrections. You will
> receive credit for the uh twenty (20) days that you've actually
> served.

*Id.* at 35.

[16] Here, we find that the sentencing statement was sufficient for meaningful appellate review. Even if the trial court's statement was an abuse of discretion, the error was harmless because McCauley's sentence was not inappropriate, as discussed further below.

### D. Pre-Sentence Investigation Report

[17] Finally, it was not error for the trial court to use the PSI, prepared by the probation office in sentencing McCauley. McCauley was released on his bond and was instructed to report to the probation department either that same day or first thing the following morning. Instead, McCauley did not attend three of his four scheduled probation meetings, and at the meeting he attended, he failed to bring the required documentation. McCauley claims he had to reschedule the first two meetings due to car trouble. At the third scheduled meeting, McCauley claimed he did not bring his informational packet, and the probation officer asked to reschedule the appointment. On his fourth scheduled meeting, McCauley stated he was sick and unable to attend. McCauley later noted that

he was "ill," "had a fever," and "just slept" through his appointment. Tr. Vol. II p. 31.

[18] Mary Kay Dobbs, of the Hancock County Probation Department, attempted to complete McCauley's PSI. While she was able to complete the report itself, she was unable to complete the interview due to McCauley's lack of attendance and lack of preparation at the scheduled meetings. Ms. Dobbs confirmed McCauley's account that McCauley was unable to attend the first two meetings because he did not have a ride. As to the third meeting, Ms. Dobbs confirmed McCauley's account that he did not fill out the PSI packet. Ms. Dobbs stated that, without this packet, the interview could take two to three hours, which was not in her schedule for the day.

[19] As to the fourth meeting, Ms. Dobbs told a slightly different version of events than McCauley. On the day of the scheduled final appointment, Ms. Dobbs said that McCauley's daughter called Ms. Dobbs and was "very embarrassed" because "[McCauley's daughter] felt like she had made a commitment to make sure that [McCauley] was there for the appointment but that he was refusing to come to the appointment." *Id.* at 28-29. According to Ms. Dobbs, McCauley's daughter did not know why McCauley refused to attend the meeting.

[20] McCauley cannot now benefit from his failure to provide detailed personal information for his PSI. Aside from the fact that McCauley had four opportunities to do so, McCauley was also given the opportunity to add any facts he thought might be relevant to the PSI at the sentencing hearing. *Id.* at

14. McCauley provided some information regarding his drug addiction and reasons why he missed his meeting with the probation department, but he provided no other detailed personal information. To the extent McCauley now claims that there is detailed personal information that should have been included and considered in the PSI, McCauley had ample opportunity to provide that information and failed to do so. Accordingly, the trial court did not abuse its discretion in using the PSI to sentence McCauley.

## II. Inappropriate Sentencing

[21]  Next, we address whether McCauley's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." *McCain v. State,* 88 N.E.3d 1066, 1067 (Ind. 2018). The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Phipps v. State,* 90 N.E.3d 1190, 1198 (Ind. 2018). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Shoun v. State,* 67 N.E.3d 635, 642 (Ind. 2017). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224.

[22] In determining whether a sentence is inappropriate, we look to the statutory ranges established for the classification of the relevant offense. McCauley pleaded guilty to a Level 5 felony. The sentence for a Level 5 felony ranges from one year to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). Here, the trial court imposed a four-year sentence.

[23] We first review the nature of McCauley's offense. McCauley sold heroin to undercover officers. McCauley pleaded guilty to an amended Count I, dealing in a narcotic, a Level 5 felony.

[24] Next, we consider McCauley's character. McCauley's criminal history does not reflect well upon his character. The trial court noted this concern when identifying the aggravating factors. McCauley was arrested for a new offense while on pretrial release. McCauley was charged with both theft, a Class A misdemeanor, and leaving the scene of an accident, a Class B misdemeanor, after his arrest for the initial charges of dealing in a narcotic drug and possession of a narcotic drug.[3] McCauley's past criminal history also includes a 2011 misdemeanor conviction for possession of a controlled substance,[4] a 2011

---

[3] We reject McCauley's argument that the new arrest and probation violation should not be used as an aggravator because it will be the "topic of a subsequent violation hearing and the new charge is pending but not yet resolved at the time of sentencing, so these should not be used to aggravate the sentence at hand." Appellant's Br. pp. 6-7. The PSI indicates that McCauley admitted to theft, and it was proper for the trial court to consider this admission at sentencing. *See Malenchik v. State,* 928 N.E.2d 564, 568 (Ind. 2010) (citing Ind. Code § 35-38-1-7.1(c) (noting that, while a pre-sentence report is required to include certain items pursuant to Indiana Code Section 35-38-1-7.1, the criteria "do[es] not limit the matters that the court may consider in determining the sentence").

[4] This charge was reduced to a misdemeanor pursuant to a plea agreement.

theft charge which was dismissed, and misdemeanor convictions in 2012, 2014, and 2015 for driving with a suspended license.

[25] McCauley struggled with substance abuse issues after he started taking Percocet following a dental procedure in 2011, and "it kind of escalated from there." Tr. Vol. II at 18. According to McCauley, he is a patient at a clinic to assist him with addiction. McCauley also identified other medical issues, which require regular doctor visits.

## Conclusion

[26] The trial court's sentence is within the statutory guidelines, and only one year higher than the advisory sentence for a Level 5 felony. Based on the foregoing, we are not convinced that McCauley's sentence is inappropriate. McCauley has not met his burden. We affirm.

[27] Affirmed.

Brown, J., and Altice, J., concur.